UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WEST BEND MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.

WESTFIELD INSURANCE GROUP, et al.,

    Defendants.

CASE NO.: 1:13CV60

Judge Michael R. Barrett

## OPINION AND ORDER

This matter is before the Court on the motion to dismiss of Defendant Westfield Insurance Group (Doc. 11), the motion to dismiss of Defendant Michael S. Munger (Doc. 15), and the motion for sanctions pursuant to Fed. R. Civ. P. 11 filed by Defendant Westfield Insurance Group (Doc. 13). Plaintiff West Bend Mutual Insurance Company has filed responses in opposition to the respective motions. (Doc. 20; Doc. 26; Doc. 21). Reply briefs were filed by Defendant Westfield Insurance Group (Doc. 30; Doc. 31) and Defendant Michael S. Munger (Doc. 32), respectively. For the reasons explained below, the motions to dismiss of Defendant Westfield Insurance Group and Defendant Michael S. Munger are granted, and the abuse of process claims against them are dismissed. However, the motion for sanctions of Defendant Westfield Insurance Group is denied.

**I.    PLAINTIFF'S ALLEGATIONS**

Plaintiff West Bend Insurance Company ("West Bend") insured Fire Extinguishers Services, Inc. ("FES"), a fire suppression installation and maintenance

1

company in Cleveland, Ohio. (Doc. 1, ¶¶ 4, 7). FES performed work on the fire suppression system at the Der Dutchman Restaurant ("DDR") in Waynesville, Ohio. (Doc. 1, ¶ 8). Defendant Westfield Insurance Group ("Westfield") insured DDR's owner, the Dutchman Hospitality Group ("DHG"). (Doc. 1, ¶ 14).

On October 13, 2010, a fire occurred at DDR. (Doc. 1, ¶ 10). The fire originated in the "Broaster." (Doc. 1, ¶ 10). A fire suppression system that had been installed by FES was present in the kitchen at the time of the fire, and allegedly failed at the time of the fire. (Doc. 1, ¶¶ 10-11). The fire caused significant damage to the DDR property. (Doc. 1, ¶ 10).

As a result of the property damage at DDR, Westfield made indemnification payments of approximately $2,970.757.25 to its insured DHG. (Doc. 1, ¶ 15). Westfield then retained Defendant Michael S. Munger ("Munger") as its attorney to prosecute any potential subrogation claims against any allegedly responsible parties. (Doc. 1, ¶ 16). After multiple fire scene investigations, Munger and Westfield properly commenced a lawsuit with probable cause against FES on February 10, 2011 in the Warren County Court of Common Pleas (the "Underlying Lawsuit"). (Doc. 1, ¶¶ 4, 8). West Bend was responsible for defending or indemnifying FES under its policy of insurance. (Doc. 1, ¶ 40). West Bend had a $1 Million policy limit on behalf of FES of which Munger and Westfield had knowledge. (Doc. 1, ¶ 19).

After the lawsuit commenced, the parties engaged in further investigations and analysis of the cause, origin, and ultimate responsibility for the damages caused by the fire. (Doc. 1, ¶ 20). West Bend claims that Munger and Westfield subsequently "gratuitously and grossly engaged in actions that perverted the proceedings in order to

2

accomplish the ulterior motive of attempting to extort money from West Bend to mitigate the approximately $2.9 Million Dollars outlay of insurance coverage money Defendant Westfield paid to its insured for the fire damage incurred at [DDR]." (Doc. 1, 20). West Bend also contends that Munger and Westfield "used the judicial process, and the knowledge that it would cost West Bend hundreds of thousands of dollars to defend against a $2.9 Million fire loss claim, by using the judicial process as a club in order to extort money from West Bend" and, specifically, to extort West Bend's $1 Million policy limits "for a claim that its insured not only had no liability for, but for one that [Munger and Westfield] and its agents objectively knew, or should have known, it could not prove and/or prevail upon based upon the evidence and Ohio law." (Doc. 1, ¶ 21). Munger and Westfield also allegedly threatened West Bend "that it was placing its insured in the precarious position of being subject to an excess verdict over and above West Bend's Policy limits, and otherwise [threatened] West Bend with bad faith." (Doc. 1, ¶ 21).

Furthermore, West Bend alleges that as part of Munger's and Westfield's attempt at coercion and extortion of a settlement from West Bend, they hired James Valentine and/or his company as a "hired gun" expert to set forth "alleged theories of liability that were patently unsustainable, both scientifically and factually, and all the while continued to demand" West Bend's policy limits and threatened to expose West Bend's insured to an excess verdict. (Doc. 1, ¶¶ 22, 25). West Bend describes Valentine's one-sided testimony and contends he did not allege that FES caused the fire or that the fire suppression system should have extinguished the fire in the Broaster. (Doc. 1, ¶¶ 27-30) West Bend also contends that Munger and Westfield had established business relationships with Valentine, and that they used Valentine to allege that FES was

responsible for the spread of the fire "through objectively false theories of liability, aimed at doing nothing more than coercing West Bend into settlement where no liability existed." (Doc. 1, ¶¶ 23-24, 31). West Bend then describes the alleged deficiencies in Valentine's testimony. (Doc. 1, ¶ 31).

West Bend also takes issue with Munger and Westfield maintaining a position that contradicted the findings of the Ohio State Fire Marshall. (Doc. 1, ¶ 32). West Bend claims the "sole purpose" of maintaining that contradictory position was to "coerce" West Bend into a settlement. (Doc. 1, ¶ 32).

West Bend further contends that Munger's actions were done maliciously and for a purpose separate from Westfield's interest. (Doc. 1, ¶ 43). Specifically, it alleges that Munger receives a significant amount of subrogation work from Westfield and knows that it is in his best financial interest to prosecute Westfield's claims and manipulate evidence to serve that purpose so that he can continuously gain the financial benefit from Westfield assigning him and his firm subrogation claims. (Doc. 1, ¶ 43).

On January 29, 2013, West Bend filed a Complaint in this Court alleging abuse of process by Munger and Westfield. (Doc. 1). West Bend contends that as a result of the alleged abuse of process by Munger and Westfield, it has suffered damages in the form of attorney fees expended while defending the Underlying Action. (Doc. 1, ¶ 44).

## II. MOTION TO DISMISS

### A. Legal Standard

The motions to dismiss are brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in

4

the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986); *see also In re Sofamor Danek Grp.,* 123 F.3d 394, 400 (6th Cir. 1997) (stating that a court "'need not accept as true legal conclusions or unwarranted factual inferences'") (quoting *Morgan v. Church's Fried Chicken*, 829 F.3d 10, 12 (6th Cir. 1987)).

### B. <u>Scope of Review</u>

Generally, a court may not consider matters outside the pleadings in ruling on a motion to dismiss pursuant to Rule 12(b)(6).  However, the Sixth Circuit has held that

"'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

The Court also may consider materials in addition to the complaint "if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The Court may take judicial notice of facts "not subject to reasonable dispute" which are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Although the Court finds that it would be appropriate to consider the public records filed in the Underlying Lawsuit attached by Munger in ruling on the motion to dismiss, it is unnecessary to do so here. Dismissal of the lawsuit against Munger is appropriate based upon only the allegations, which fail to state a claim upon which relief may be granted.

### C. Analysis

Generally, to state a claim for abuse of process, a plaintiff must show: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful

use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 626 N.E.2d 115, paragraph one of the syllabus (1994). In addition, when an action for abuse of process is raised against an attorney, the plaintiff must show the attorney acted maliciously and with an ulterior purpose that was completely separate from his client's interests. *Wolfe v. Little*, No. 18718, 2001 Ohio App. LEXIS 1902, at *5-6 (2d Dist. Apr. 27, 2001) (citing *Thompson v. R & R Serv. Sys.*, No. 96APE10-1277, 96APE10-1278, 1997 Ohio App. LEXIS 2677, at *36 (10th Dist. June 19, 1997), citing *Scholler v. Scholler*, 10 Ohio St. 3d 98, 462 N.E.2d 158, paragraph one of syllabus (1984)). Munger and Westfield concede that West Bend has sufficiently alleged the first element of its claim. Munger and Westfield instead contend that West Bend has failed to prove the second and third elements of its claim against them. Additionally, Munger contends that West Bend has failed to prove the fourth element in the claim against him in his capacity as an attorney.

### 1. Element Two (Munger and Westfield)

To sustain a claim for abuse of process, a plaintiff must allege facts on the second element that plausibly show the defendant committed an act during the process that was not proper in the normal context of the proceeding and that it did so with an ulterior motive. *Ruggerio v. Kavlich*, No. 92909, 2010 Ohio App. LEXIS 3403, at *15 (8th Dist. Aug. 26, 2010). "[T]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club,* 75 Ohio St. 3d 264, 271, 662 N.E.2d 9,

7

14 (1996). "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Id.*

The Ohio Supreme Court's decision in *Robb* is instructive on when an ulterior motive may be found to exist. There, the Ohio Supreme Court held that there was proof of an ulterior motive where plaintiffs' lawsuit filed against a yachting club was being used to coerce members of the yachting club to vote in their favor. *Robb*, 75 Ohio St. at 271. In reaching that conclusion, the court recognized the "trial court had no authority to order club members how to vote." *Id.* In other words, the underlying lawsuit was being used to accomplish a purpose that the trial court had no authority to decide. *Id.*

On the other hand, an abuse of process claim does not arise when a party uses the court to pursue a legal remedy that the Court is empowered to give. *See Sivinski v. Kelley*, No. 94296, 2011 Ohio App. LEXIS 1821, at *16 (8th Dist. May 5, 2011) (citing *Ruggerio*, 2010 Ohio App. LEXIS 3403, at *12-13). The mere fact that the claim is determined to be without merit does not suffice to sustain an abuse of process claim. *Id.* Further, there can be no "liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, L.P.A., 68 Ohio St. 3d 294, 298 n. 2, 626 N.E.2d 115 (1994) (citing Prosser & Keeton, The Law of Torts (5 Ed.1984) 898).

An Ohio appellate court's decision in *Sivinski*, 2011 Ohio App. LEXIS 1821, provides relevant guidance as to when facts do not suffice to sustain an abuse of process claim. In *Sivinski*, the estate of a deceased individual was involved in an underlying dispute concerning an employment agreement for compensation of an

alleged equity partner following the death of the other equity partner.  2011 Ohio App. LEXIS 1821, at *2-7.  One of the defendants pursued an abuse of process claim against the plaintiff for concealing relevant evidence relating to an alleged superceding agreement and for dismissing the only party with potential liability while proceeding against the more vulnerable defendant.  *Id.* at *12-18.  The court of appeals held as follows:

> While the concealment of the 1999 Agreement clearly gives rise to a discovery violation, this evidence falls short of the ulterior motive necessary for an abuse of process claim; simply, the concealment was not an attempt to gain a collateral benefit outside of the process. To the contrary, such misconduct reveals an intent "to gain an objective contemplated by the process, i.e., succeeding in the lawsuit." *Wolfe v. Little* (Apr. 27 2001), 2d Dist. No. 18718, 2001 Ohio App. LEXIS 1902.  And although such conduct is egregious and qualified as an improper act, the absence of an "ulterior motive" defeats an abuse of process claim. *Id.*; *see, also, Grange Mut. Cas. Co. v. Klatt* (Mar. 18, 1997), 10th Dist. No. 96APE07-888, 1997 Ohio App. LEXIS 1125.
>
> We likewise find that [plaintiff's] pursuit of his claims against the [remaining defendant], after having dismissed [the other defendant] – the alleged liable party on his claims – does not provide sufficient proof of an "ulterior motive" to satisfy an abuse of process claim. The gravamen of its argument is that [plaintiff] wrongfully continued to pursue his claims against the [remaining defendant], the most vulnerable defendant, for the express purpose of forcing it to pay money and satisfy the debt of another.  The primary thrust of its claim is that [plaintiff] was improperly trying to extort money from [the remaining defendant] when he discovered that his claims no longer had any merit.  While such an argument may be a basis for sanctions under Civ. R. 11 or R.C. 2323.51, the frivolous conduct statute, it does not satisfy the second element for an abuse of process claim.

2011 Ohio App. LEXIS 1821, at *14-15.  The court of appeals went on to say:

> Further, while the [remaining defendant] argues that [plaintiff's] pursuit of his claims, which it contends were meritless and made in bad faith, is enough to satisfy the second element of an abuse of process claim, this court has consistently rejected such an argument. *See, e.g., Tilberry v. McIntrye* (1999), 135 Ohio App. 3d 229, 733

9

>N.E.2d 636; *Ruggerio*, [2010 Ohio App. LEXIS 3403]; *Kavlich v. Hildebrand*, 8th Dist. No. 91489, 2009 Ohio 1090. Indeed, "[i]t is well-settled . . . that a threat to pursue a civil action, even if such action would be entirely frivolous or brought in bad faith, does not constitute extortion." *Tilberry*, [135 Ohio App. 3d] at 241. Finally, "there is no liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, [68 Ohio St. 3d] at 298.
>
>Here, we simply find no evidence that [plaintiff] abused the legal process to accomplish an ulterior motive. His motive from the inception of the case has been to recover money under a contract, which is the very subject of this suit. [Plaintiff] has maintained since the filing of the suit that he is entitled to payment against [the remaining defendant] under the 1997 Agreement. If [Plaintiff] had been successful, the trial court would have had the power to award him the remedy that he was seeking. And even though [Plaintiff] failed on his claims, and the trial court found that the 1997 Agreement was superceded by the 1999 Agreement, an agreement that [plaintiff] denied existed, we still cannot say that an abuse of process claim lies.

*Id.* at *16-18. *See also Sullivan v. Tuschman*, No. L-06-1373, 2007 Ohio App. LEXIS 3272, at *8-9 (6th App. July 13, 2007) (appellate court affirmed dismissal of plaintiff-doctor's abuse of process claim for lack of "ulterior purpose" where the attorney was alleged to have initiated an unsuccessful malpractice lawsuit for the sole purpose of forcing the plaintiff-doctor to pay money).

Here, the Court finds that even when West Bend's allegations are accepted as true, they are insufficient to state a plausible abuse of process claim against Munger or Westfield. Similar to *Sivinski*, the gravamen of West Bend's abuse of process claim in this case is that Munger and Westfield intended to extort from or coerce out of West Bend its policy limits to settle the claims in the Underlying Lawsuit, even though Munger and Westfield knew the claims lacked merit. According to West Bend's allegations, Munger and Westfield made the allegedly unjust settlement demands in an attempt to settle the exact claims before the court in the Underlying Lawsuit. That court thus had

10

the power to adjudicate the claims that were the subject of the settlement demands and to award Westfield the amounts it sought if the claims were found to have merit. To the extent the claims lacked merit, the presiding court also had the authority to dispose of those claims through numerous avenues, such as by ruling on properly filed dispositive motions. As such, West Bend's allegations as to the motives of Munger and Westfield do not plausibly show that they were seeking to gain an advantage that was collateral to the matters involved in the Underlying Lawsuit. To the contrary, those allegations reveal an intent to advocate for Westfield's position in the Underlying Lawsuit, which is an objective contemplated by the legal process. *See Wolfe*, 2001 Ohio App. LEXIS 1902, at *12-13. Even if the position Munger and Westfield maintained lacked merit, Ohio courts have held that such conduct does not satisfy the second element of an abuse of process claim. *See Yaklevich*, 68 Ohio St. 3d at 298; *Sivinski,* 2011 Ohio App. LEXIS 1821, at *16-18; *Sullivan*, 2007 Ohio App. LEXIS 3272, at *8-9.

Although West Bend alleges that the objective "was not properly involved in the proceeding itself" (*see, e.g.*, Doc. 1, ¶ 21) and that Westfield and Munger attempted "to accomplish an ulterior purpose for which [the process] was not designed" (*see, e.g.*, Doc. 1, ¶¶ 39, 42), along with other similar allegations, those allegations are conclusory and need not be accepted as true in ruling on the motion to dismiss.

West Bend's allegations as to the purportedly improper or unethical conduct of Munger and Westfield also fall short of satisfying the second element. Each of those allegations concern conduct undertaken in pursuit of an objective directly tied to the Underlying Lawsuit, which is insufficient to satisfy the second element. First, West Bend's allegations that Munger and Westfield understood that continuing litigation would

11

require West Bend to expend costs and attorneys' fees to defend the matter do not plausibly suggest that increasing West Bend's defense costs in and of itself was Munger's or Westfield's motive. There are no allegations or arguments, for example, that Munger or Westfield intended to increase defense costs to bankrupt West Bend, which could have constituted an ulterior motive. Instead, Munger and Westfield are alleged to have used the fact of increasing defense costs merely as a vehicle for convincing West Bend to settle the Underlying Lawsuit. Stated differently, Munger and Westfield are alleged to have attempted to use the fact of increasing defense costs to achieve a successful outcome on its claims in the Underlying Lawsuit. Such allegations do not satisfy the second element.

Second, Munger's and Westfield's alleged conduct in relation to their expert witness also constitutes a litigation tactic tied to securing a favorable outcome in the Underlying Lawsuit. Although West Bend may disagree with the expert chosen by Westfield and Munger, the evidence upon which that expert relied, and the expert's ultimate opinions in the matter, the determination as to the admissibility and strength of the expert's testimony are matters to be handled by the presiding court in the original action. Indeed, the litigation process provides for methods by which alleged deficiencies in an expert's opinion or in the evidence itself can be attacked and exposed. As such, those allegations are not enough to satisfy the second element.

Third, West Bend's additional allegations concerning falsification of evidence, threatening bad faith claims,[1] and threatening an excess verdict also are insufficient. Each of those acts is alleged to have been taken with the ultimate purpose of securing a

---

[1] Notably, "[i]t is well-settled . . . that a threat to pursue a civil action, even if such action would be entirely frivolous or brought in bad faith, does not constitute extortion." *Tilberry*, 135 Ohio App. 3d at 241.

more favorable settlement in the Underlying Litigation. In other words, they were not taken to advance Munger's or Westfield's position in a collateral matter.  The determination as to the propriety of litigation tactics used to advance a party's position in the Underlying Lawsuit is a matter entrusted to the court in the original action rather than the Court or jury in this subsequent action.  The court in the original action also was entrusted with the authority to sanction parties for improper litigation tactics under Civil Rule 11 or Ohio Revised Code § 2323.51.  While the imposition of sanctions under Rule 11 and Section 2323.51 does not prevent a party from also pursuing a proper abuse of process claim, not all conduct that is sanctionable rises to the level of abuse of process.  In this case, the conduct, even if sanctionable or undertaken in bad faith, falls short of abuse of process given that no allegations support an ulterior motive separate from the process itself.  The absence of an "ulterior motive" thus defeats the abuse of process claim.

Accordingly, when West Bend's allegations are construed in the light most favorable to it, they demonstrate only that Westfield and Munger carried out the process to its authorized conclusion, even though it may done so with bad intentions and through purportedly improper conduct.  Those allegations as a whole are insufficient to show a perversion of the process to accomplish an ulterior motive.  Thus, the abuse of process claims against Munger and Westfield fail on the second element.

### 2. Element Three  - Direct Damage (Munger and Westfield)

Westfield and Munger contend that West Bend has not alleged any direct damage to West Bend as a result of the alleged abuse of process.  They focus on the fact that West Bend had a duty to defend the insured which arose at the time the lawsuit

was properly filed, that no judgment was rendered against FES, and that West Bend did not indemnify FES. Munger further argues that West Bend lacks standing to pursue the claims because it was not a named party in the Underlying Lawsuit.

Ohio courts have recognized that a "'viable abuse of process claim inherently suggests damages in the form of attorney fees expended while defending the action.'" *Ruggerio*, 2010 Ohio App. LEXIS 3403, at \*14 (quoting *Goforth v. Le-Air Molded Plastics, Inc.*, No. 83585, 2004 Ohio App. LEXIS 3121, at \*17 (8th Dist. July 1, 2004) (dissenting opinion)); *see also Zimmer v. Yant*, No. 87AP-170, 1987 Ohio App. LEXIS 9860, at \*6 (10th Dist. Dec. 3, 1987) ("In [the plaintiff's main action for abuse of process, attorney fees may be recovered as an item of damage.") (citing Prosser & Keeton, Law of Tort (5 Ed. 1984) 900, Section 121). Here, West Bend has alleged that it undertook its contractual duty to defend FES in the Underlying Lawsuit. It also has alleged that it incurred attorney's fees as a result of Westfield and Munger suing West Bend's insured in the Underlying Lawsuit, and specifically, as a result of the alleged abuse of process by Westfield and Munger. Those allegations are sufficient to show harm to what may be a legally protected interest. Nevertheless, even if West Bend can prove damages, it still cannot show a direct connection between those alleged damages and abuse of process by Munger or Westfield because, for the reasons explained above, it has not set forth allegations that satisfy the second element of an abuse of process claim. Accordingly, West Band has not sufficiently alleged direct damages resulting from the wrongful use of process, and its abuse of process claims against Munger and Westfield fail on the third element.

      **3. Element Four – Ulterior Motive Separate from the Interests of Westfield (Munger only)**

The abuse of process claim against Munger fails for the additional reason that West Bend's allegations do not satisfy the fourth element of such a claim against an attorney. Under the fourth element, an attorney may only be held liable if he acts maliciously and with an ulterior purpose that is completely separate from his client's interests. *Wolfe*, 2001 Ohio App. LEXIS 1902, at *5-6. West Bend's allegations do not plausibly show an ulterior purpose *completely* separate from Westfield's interests.

To the extent that West Bend intends to allege that Munger acted with the purpose of obtaining a favorable settlement of the Underlying Lawsuit, that purpose is the precise purpose for which Westfield is alleged to have acted. It therefore is not completely separate from Westfield's interests. Further, as explained above, that purpose is not collateral to the Underlying Lawsuit.

West Bend's allegations that Munger also had a financial interest in obtaining a favorable outcome for Westfield in the Underlying Lawsuit fails to completely divorce Munger's interest from that of Westfield.[2] At best, the allegations show that Munger had a motive that was incidental to the interests of Westfield. According to West Bend, if Munger obtains a favorable outcome for Westfield, then Munger also obtains a financial benefit and retains Westfield as a regular client. The converse of that is that if Munger does not obtain a favorable outcome for Westfield, then he loses a financial benefit and loses future work from Westfield. Munger's financial interest and business interest thus are directly linked to the interests of Westfield in obtaining a favorable outcome in the Underlying Lawsuit.

---

[2] Although West Bend references its allegations that Munger "pursued the Underlying Lawsuit for the "*separate and distinct 'ulterior purpose*' of obtaining future work from Westfield" (Doc. 26, p. 14), that characterization is simply a legal conclusion couched as a factual allegation, and the Court need not accept it as true.

15

If the Court were to find West Bend's allegations as sufficient to state an ulterior motive, then a large majority of attorneys would be subject to an abuse of process claim for obtaining a financial benefit from a client and seeking to retain the business of a client through vigorous representation and favorable case outcomes.  That interest is not the type of "ulterior" purpose that an abuse of process claim is designed to address. *Compare with Kelley v. Buckley*, 193 Ohio App. 3d 11, 35-36, 950 N.E.2d 997 (8th Dist. 2011) (defense attorney has ulterior motive separate from his client's interest where he coerced the plaintiff into settlement not to further his client's interest in the underlying lawsuit or to obtain payment for his representation, but for his own independent interest in preventing the dissolution of a plaintiff's law firm so that the defense attorney could continue receiving "kickbacks" from that plaintiff's law firm in the future when that defense attorney settled other cases he had against the clients of the plaintiff's law firm). Accordingly, West Bend has not set forth allegations that plausibly satisfy the fourth element of an abuse of process claim against Munger.

### III.   MOTION FOR SANCTIONS

Having reviewed the briefings of the parties in light of Rule 11, the Court denies the motion for sanctions.

### IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss of Westfield (Doc. 11) and the motion to dismiss of Munger (Doc. 15) are **GRANTED**, and the motion for sanctions of Westfield (Doc. 13) is **DENIED**.  It is **ORDERED** that the Complaint (Doc. 1) is **DISMISSED** in its entirety.  This case shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court